1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

|  |  |
|---|---|
| | Case No. 1:14-CV-03132-VEB |
| RHONDA PETERS, | |
| Plaintiff, | DECISION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**I. INTRODUCTION**

In October of 2010, Plaintiff Rhonda Peters applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. The Commissioner of Social Security awarded SSI benefits, but denied Plaintiff's application for DIB.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

On May 29, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 27).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on October 21, 2010, alleging disability since November 1, 2008. (T at 27, 204-05, 206-211).[1]  The applications were denied initially and on reconsideration and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On November 13, 2012, a hearing was held before ALJ Ruperta M. Alexis. (T at 45).  Plaintiff appeared with an attorney and testified. (T at 48-65, 66-67).  The ALJ also received testimony from Trevor Duncan, a vocational expert. (T at 65-66, 67-73).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

On January 25, 2013, the ALJ issued a written decision granting the application for SSI benefits, but denying the application for DIB.  (T at 23-43).  The ALJ's decision became the Commissioner's final decision on July 17, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On September 14, 2014, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 4). The Commissioner interposed an Answer on November 18, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on March 19, 2015. (Docket No. 21).  The Commissioner moved for summary judgment on June 8, 2015. (Docket No. 28).  Plaintiff filed a reply brief on June 22, 2015. (Docket No. 29).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.


## III. DISCUSSION

### A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall

be determined to be under a disability only if any impairments are of such severity

that a plaintiff is not only unable to do previous work but cannot, considering

plaintiff's age, education and work experiences, engage in any other substantial work

which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Thus, the definition of disability consists of both medical and vocational components.

*Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).                    The

Commissioner has established a five-step sequential evaluation process for

determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one

determines if the person is engaged in substantial gainful activities. If so, benefits are

denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker

proceeds to step two, which determines whether plaintiff has a medially severe

impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii).                                         If plaintiff does not

have a severe impairment or combination of impairments, the disability claim is

denied. If the impairment is severe, the evaluation proceeds to the third step, which

compares plaintiff's impairment with a number of listed impairments acknowledged

by the Commissioner to be so severe as to preclude substantial gainful activity. 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial

gainful activity and (2)  a "significant number of jobs exist in the national economy"

that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.     Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's

decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made

through an ALJ, when the determination is not based on legal error and is supported

by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985);

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's]

determination that a plaintiff is not disabled will be upheld if the findings of fact are

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a

preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]

may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348

F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole,

not just the evidence supporting the decision of the Commissioner. *Weetman v.*

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

*Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

In her decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2008 (the alleged onset date) and met the insured status requirements of the Social Security Act through June 30, 2009. (T at 29).  The ALJ found that Plaintiff's degenerative changes in the lumbar and cervical spine and

mild bilateral carpal tunnel syndrome (status – post left carpal tunnel release) were "severe" impairments under the Act. (Tr. 30).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 32).

The ALJ determined that, prior to September 2, 2012, Plaintiff retained the residual functional capacity ("RFC") to lift/carry 50 pounds occasionally and 25 pounds frequently when using both hands; lift/carry 20 pounds occasionally and 10 pounds frequently with the left (non-dominant) upper extremity;  lift/carry 20 pounds occasionally and 10 pounds frequently with the right (dominant) upper extremity; stand/walk without limitation during an 8-hour workday; frequently handle, finger, and feel with the left upper extremity;  and occasionally handle, finger, and feel with the right upper extremity. (T at 32).

The ALJ found that, beginning on September 12, 2012 (as discussed below, it appears the ALJ's reference to September 12th is a typographical error and that she meant to refer to September 2, 2012, Plaintiff's 55th birthday), Plaintiff retained the RFC to perform light work, as defined in 20 CFR § 404.1567 (b) and 416.967 (b).

The ALJ concluded that Plaintiff could not perform her past relevant work as a bartender, agricultural production sorter, or stock clerk, as of September 12, 2012. (T

at 36).  Considering Plaintiff's age (51 on the alleged onset date, 55 as of September 2, 2012), education (limited), work experience, and residual functional capacity, the ALJ determined that, as of September 2, 2012, there were no jobs that exist in significant numbers that Plaintiff could perform. (T at 36-37).  Accordingly, the ALJ determined that Plaintiff became disabled as of September 2, 2012 and was therefore entitled to SSI benefits from that date. (T at 37-38).

However, the ALJ found that Plaintiff only became disabled as of September 2, 2012.  Thus, with respect to the period between November 1, 2008 (the alleged onset date) and June 30, 2009 (the date last insured), the ALJ found that Plaintiff was not disabled within the meaning of the Act and was therefore not entitled to DIB. (T at 37-38).

**D.   Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed.  She offers three (3) main arguments.  First, she contends that the ALJ did not properly assess the opinion of her treating physician.  Second, Plaintiff challenges the ALJ's consideration of the consultative examiner's opinion.  Third, she asserts that the ALJ erred in determining the date of disability onset. This Court will address each argument in turn.

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

**IV. ANALYSIS**

**A.    Treating Physician Opinions**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

Dr. Rex Quaempts, Plaintiff's primary treating physician, performed a series of functional assessments and physical evaluations.

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

In February of 2010, Dr. Quaempts opined that Plaintiff's cholecystitis would cause marked limitation with regard to her ability to walk, lift, and communicate. (T at 551). He assessed moderate limitations as to carrying, handling, and lifting arising from Plaintiff's bilateral carpal tunnel syndrome. (T at 551). Dr. Quaempts opined that Plaintiff could perform lift work, defined as work involving the ability to lift 20 pounds maximally and lift/carry up to 10 pounds and walking or standing up to 6 out of 8 hours per day. (T at 551).

In August of 2010, Dr. Quaempts described Plaintiff's condition as "deteriorating," and opined that Plaintiff could stand for 4 hours in an 8-hour workday, sit for 3 hours in an 8-hour workday, lift 20 pounds occasionally, and lift 10 pounds frequently. (T at 547). He reported that Plaintiff had bilateral severe carpal tunnel syndrome and was "not currently employable." (T at 548).

In February of 2011, Dr. Quaempts opined that Plaintiff could stand for 1 hour in an 8-hour workday, sit for 8 hours in an 8-hour workday, and lift 5 pounds frequently. (T at 543). He assessed gross or fine motor restrictions arising from recent carpal tunnel surgery and reported that participation in employment activities was not appropriate at the time. (T at 544).

In May of 2011, Dr. Quaempts indicated that Plaintiff could stand for 2 hours in an 8-hour workday, sit for 4 hours in an 8-hour workday, lift 20 pounds

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

occasionally, and lift 5 pounds frequently. (T at 545). He assessed no postural restrictions, but noted gross or fine motor restrictions arising from carpal tunnel. He that opined participation in employment activities was not appropriate at the time. (T at 546).

In June of 2012, Dr. Quaempts opined that Plaintiff's work function was impaired by a medically determinable physical condition, but found that she could sit for most of the day, with walking or standing for brief periods. (T at 725). Dr. Quaempts reported that Plaintiff could lift a maximum of 20 pounds and frequently lift/carry 2 pounds. (T at 725).

The ALJ afforded "little weight" to Dr. Quaempts's February 2010 opinion, noting that Dr. Quaempts did not provide any justification for the standing or sitting restrictions, that Plaintiff's cholecystitis had been successfully treated with surgery, and that EMG findings indicated that her carpal tunnel syndrome was mild in severity. (T at 35). The ALJ gave "minimal weight" to Dr. Quaempts's August 2010, February 2011, May 2011, and June 2012 assessments, finding them inconsistent with the clinical findings. In addition, the ALJ again noted that Dr. Quaempts's opinions were based, in part, on carpal tunnel syndrome symptoms, which the ALJ found to be mild in nature. (T at 35).

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

This Court finds the ALJ's consideration of Dr. Quaempts's opinions to be supported by legally sufficient reasons and evidence.

The ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Here, Dr. Quaempts's assessments are conclusory in nature and do not contain narrative explanations for the limitations assessed.

Moreover, the ALJ provided a detailed summary of the evidence, which recognized some degenerative changes in Plaintiff's back and neck, but generally documented benign findings. For example, Plaintiff typically demonstrated normal range of motion in the cervical and lumbar spine, with limitations only at extremes of movement; intact gait and station; the ability to squat, hop, and walk on heels and toes; intact sensation, motor strength, deep tendon reflexes, and range of motion in the lower extremities. (T at 550, 553-59, 610, 636, 642, 646). EMG findings indicated that Plaintiff's carpal tunnel was mild in severity. (T at 484-85).

In addition, the ALJ's decision to discount Dr. Quaempts's opinions was supported by the assessment of the consultative examiner. Dr. Brett Norman performed a consultative examination in June of 2011. Dr. Norman diagnosed cholecystitis, knee arthritis, and bilateral carpal tunnel syndrome. (T at 557). He

opined that Plaintiff would have no limitations with regard to standing, walking, or sitting. (T at 558).  He assessed that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently with both hands.  If limited to one hand, Dr. Norman concluded that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently with her left hand and 10 pounds occasionally and frequently with her right hand. (T at 558).  Dr. Norman assessed no limitations as to postural activities. (T at 558).  He concluded that Plaintiff could frequently reached, handle, finder, and feel with her left hand and occasionally reach, handle, finger, and feel with the right hand due to carpal tunnel syndrome. (T at 558).   Dr. Norman opined that Plaintiff had no workplace environmental activity limitations. (T at 559).  The ALJ afforded "great weight" to Dr. Norman's assessment, and incorporated his findings into the RFC determination, with two provisos.[2]  (T at 36).

Plaintiff argues that the ALJ should have weighed the evidence differently and resolved the conflict in favor of Dr. Quaempts's assessments, but it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.  Although the contrary

---

[2]  As discussed further below, the ALJ did not accept Dr. Norman's restriction as to Plaintiff's right arm lifting, finding instead that Plaintiff could lift/carry up to 20 pounds occasionally with her right arm. (T at 36).  The ALJ also did not accept Dr. Norman's conclusion that Plaintiff was limited to occasional reaching with her right arm. (T at 36).

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

opinion of another medical expert does not, without more, constitute a specific, legitimate reason for rejecting a treating physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. M*agallanes*, 881 F.2d at 752.   Here, the ALJ reasonably relied upon Dr. Norman's assessment, which was based on his independent examination, and cited substantial evidence in the record that provided a legally sufficient basis for giving more weight to Dr. Norman's evaluation than to the opinions provided by Dr. Quaempts. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that consultative examiner's opinion "constitutes substantial evidence, because it rests on his own independent examination"); *see also Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).

Accordingly, this Court finds no reversible error with respect to the ALJ's consideration of Dr. Quaempts's opinions.

**B.    Consultative Examiner Opinion**

As noted above, Dr. Norman, a consultative examiner, opined that, if limited to one hand, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently with her left hand and 10 pounds occasionally and frequently with her right hand. (T at 558).  Dr. Norman also assessed that Plaintiff was limited to occasional reaching with her right arm. (T at 558). The ALJ generally afforded "great weight" to Dr. Norman's

opinion, but concluded that Plaintiff could lift/carry up to 20 pounds occasionally with her right arm. (T at 36).  The ALJ also concluded that Plaintiff did not have any significant reaching restrictions. (T at 36).

In this regard, the ALJ cited evidence that Plaintiff has full range of motion in both shoulder joints and denied problems with reaching. (T at 36).  The ALJ also noted that there was no evidence of cervical radiculopathy and that Plaintiff retained full motor strength in the right upper extremity (with the exception of mild weakness on gripping) and full range of motion in the right upper extremity joints. (T at 36).

This Court is troubled by the ALJ's decision to discount this aspect of Dr. Norman's assessment.  First, the reaching limitation was significant.  During the hearing, the ALJ advised Plaintiff's counsel that it was "not my intent to depart" from Dr. Norman's findings. (T at 69).  The vocational expert questioned whether a right-hand dominant person, limited to no more lifting than 10 pounds and only occasional reaching with that hand, could sustain competitive employment. (T at 70-71).

Second, the ALJ's statement that Plaintiff "denied" any reaching limitation is overstated.  Plaintiff completed a checklist of limitations, wherein she checked lifting, squatting, standing, walking, sitting, kneeling, stair climbing, and using her hands. (T at 259).  Although Plaintiff did not check the box indicating a problem with reaching, she did indicate problems with her hands and wrote in the narrative portion of her

report that she "can't lift any amount of weight for any long period" because of hand numbness. (T at 259). The record is filled with complaints of hand and wrist pain and efforts to seek treatment for numbness and related conditions. (T at 428, 429, 431, 464-65, 471-72).    Dr. Norman found positive Tinel's sign and Phalen's sign (diagnostic tests for carpal tunnel) bilaterally, greater on the right than the left. (T at 556).   Dr. Gade, a treating physician, assessed carpal tunnel syndrome in the right wrist and recommended release surgery, which was still pending at the time of the hearing. (T at 613).   The ALJ did not discuss this evidence when explaining her decision to discount Dr. Norman's assessment and find that Plaintiff had no significant reaching restriction.  If the ALJ had recognized a reaching limitation, perhaps to a degree not as severe as Dr. Norman, this Court would have less concern.  However, the RFC determination contains no reaching restriction whatever. (T  at 32).

Accordingly, this Court finds that the ALJ's assessment of Plaintiff's reaching abilities should be revisited on remand.

## C.    Date of Disability Onset

At this step of the sequential evaluation process, the ALJ determined that there were significant jobs that Plaintiff could have performed in the national economy prior to September 2, 2012, her 55th birthday. (T at 32).  However, once Plaintiff turned 55

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

she became a "person of advanced age" under the Social Security Regulations, 20 CFR §§ 404.1563 (e), 416.963 (e).

The ALJ determined that, as of September 12, 2012 (this appears to be a typographical error by the ALJ – who was presumably referencing September 2nd – Plaintiff's birthday), Plaintiff was limited to light work, as defined in 20 CFR §§ 404.1567 (b) and 416.967 (b). (T at 36). The ALJ then determined that there were no jobs that Plaintiff could perform in the national economy after her 55th birthday. (T at 36-37). Thus, the ALJ determined that Plaintiff was disabled as of that date. (T at 37).

The ALJ's decision is unclear on certain important points. It appears the ALJ found a change in Plaintiff's RFC as of September 2, 2012. On page 36 of her decision, the ALJ states that, prior to that date, Plaintiff retained the RFC to perform medium work, with some manipulative restrictions in the upper extremities (right greater than left). (T at 36). In the next sentence on the same page, the ALJ finds that as of September 12, 2012 (again, the date appears to be a typo), Plaintiff's RFC was now limited to light work. (T at 36). However, no explanation is provided for the change in RFC as of that date. The primary evidence relied upon by the ALJ throughout the decision (Dr. Norman's opinion) was rendered in June of 2011. The Commissioner responds that the ALJ was simply concluding that Plaintiff became disabled because of her change in age category. This would make sense if there had

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB

been no change in the RFC determination.  In other words, Plaintiff would retain the same RFC, but per the Medical-Vocational Guidelines, the impact of that RFC would have changed when Plaintiff's age category changed.  However, the decision seems to also indicate an RFC change (from medium to light work) occurred on or about Plaintiff's birthday, without offering any explanation for that change.

 To further confuse matters, the ALJ's step five analysis related to the period after September 2, 2012, refers to *limitations* that "erode the unskilled *medium* occupational base" (emphasis added), which suggests that perhaps the ALJ did not intend to change the RFC determination and that the reference to a light work limitation (like the reference to the September 12th date) was a typographical error.

In any event, this issue should be revisited and clarified on remand.  If the intention was to find a change in Plaintiff's RFC as of her 55th birthday, an evidentiary explanation for that change would need to be provided.

## D.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the

court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, this Court finds that a remand for further proceedings is warranted.  The ALJ needs to address Plaintiff's reaching abilities and reconcile the conflicting concerns outlined above relative to the disability onset day.

## IV. ORDERS

20

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No. 21, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 28, is DENIED.

This case is remanded for further proceedings,

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and close this case.

DATED this 14th day of December, 2015.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – PETERS v COLVIN 14-CV-03132-VEB